May it please the Court, I'm Assistant United States Attorney Robin Marie Lyon-Montiglioni. I represent the defendants' appellants, Toby Byrd and Jeff Winkler. I'd like to reserve two minutes of my time. Plaintiff appellant Anthony Hayes asserts claims against Agent Byrd and Agent Winkler in their individual capacity under Bivens. The District Court's decision denying them is based on Mr. Hayes' own sworn testimony. Neither Agent Byrd nor Agent Winkler could have been the unknown individuals who kicked him because, through Mr. Hayes' own testimony, demonstrated that the alleged excessive force occurred after the DEA agents had passed him and he had been turned over to the LAPD perimeter team to be handcuffed. He says that they hit him after they passed him? Mr. Hayes testified that after he was prone on the ground and somebody had put pressure on his neck and back. I asked you a question. Yes, Your Honor. I was trying to give the sequence of events. It was a yes or no question. Yes. He says they hit me after they passed me. He said that he saw either 10 feet or 10 pairs of feet run past him, and then a time period after that he was kicked. And the testimony was? And he said those – I saw Byrd and Hayes be among those feet that passed me? No, Your Honor. Mr. Hayes did not. So it's really wrong for you to say that he, by his own testimony, said he was hit after Hayes and Byrd passed him. He never says Hayes and Byrd passed him. That is correct, Your Honor. But you have to put his testimony or one aspect of his testimony together with some other evidence in the record for you to reach that conclusion. And that's what juries are for. This does not – I mean, it's one thing for you to say, look, he says, I saw them pass me, they're gone, and then they hit me, which would be an impossibility. But he says nothing of the sort. He has a story. In fact, he has several stories. And then you want to bring this other evidence that other people provide, that by the time he says he was hit, the agents were – but, of course, these people might not be telling the truth, the people who, say, claim the agents were in the house. How do we know they are not lying? Well, there is no evidence that they had not passed him by. See, you have to prove an internal inconsistency. You have to prove that this is an impossibility. And your story hinges – you know, your first theory hinges on our believing as a gospel truth the testimony of people who said that Hayes and Byrd were in the house by that time. We have to accept that. We have to believe that. Plus, we have to accept one version of plaintiff's story. Maybe you have two or three different versions. You have to ignore the brothers' version, right? That's a lot of picking and choosing you're doing for trying to win something as a matter of law. Well, Your Honor, regardless of whether we believe the agents' testimony or ignore it, regardless – Okay. Let's ignore it. Fine, Your Honor. Okay. So when – how do you have the agents in the house if you ignore their testimony? If you ignore their testimony, you do not know that the agents are in the house. You do not know where the agents are. According to – He says they kicked me. Well, Mr. Hayes says he testified repeatedly that he had no idea who kicked him. He never lifted his head. He never saw who kicked him. He said there were a couple of guys in green and one guy in a suit. We know the people in green and suit were DEA agents, right? We know that the individuals, the ten individuals in green were DEA agents. Mr. Hayes does not know whether he was kicked by a DEA agent or whether he was kicked by one of the uniformed LAPD officers or whether he was kicked by a plainclothes detective from the LAPD. And that's why you will win it before the jury. Well, Your Honor – You should be very confident. Your Honor, based on Mr. Hayes' testimony, there would be a basis to deny summary judgment in favor of the United States for conduct by potential – Well, we can't re-weigh the facts. You understand that. You know, you accept it. You say it in your brief, but you don't believe it in your heart. That aspect of Judge Mathis' ruling we cannot re-weigh here. We have no authority. We have to take plaintiff's best case, and unless you can show a sham in one of the pieces of testimony, which is something you can try to do, we have to pretty much accept his way that there is a – that there is a tribal issue of fact here. It's not something we can get into. And if you don't accept that, you're wasting your time here. That's what our case law says. Well, Your Honor, I believe that under the case law, Mr. Hayes has to show a link between the individual charged with individual liability to go forward with trial. It is not enough under the case law to have a group liability theory that there were 20 agents and officers present, that Agent Winkler and Agent Byrd – Have you ever heard of six unknown federal agents? Yes, Your Honor. I have. Did the plaintiff there lose or win? Let's say it all together. I'm aware – Come on. Let's say it together. One, two, three. Plaintiff won. There we go. Does the fact that they were unknown cause the dismissal of the case? No. No. Okay, so let's not talk about that. Well, Your Honor, I believe under subsequent decisions by the Supreme Court and by this Court – Move over rule six – Move over rule Bivens, do you think? No, Your Honor, but I do think – Does the Supreme Court move over rule Bivens? No, Your Honor. It might next term. You just take this case up. Who knows? Anything is possible. Your Honor, the Supreme Court has not overruled Bivens, and it is still possible to find individual liability on behalf of individual federal agents. However, under the doctrine of qualified immunity, those agents do have a right to test the claims against them prior to trial. They have an immunity from being put through the trial process. Let me give you the quick tutorial on qualified immunity. I'm sorry? Okay. Let me give you the quick tutorial on qualified immunity. It is not about facts. Okay? It is not about picking apart plaintiff's facts. It is saying, look, accepting his best case – accepting his best case is – would – and assuming that the agents did exactly what his best case is, would the reasonable agents have known that that is an illegal thing to do? That's all. And we all know, sitting here, that kicking a guy as he's being handcuffed, kicking him in the head as he's being handcuffed or while he's handcuffed on the ground, is a big no-no for police. We don't like it when they do that. We are against it. No question, Your Honor. Okay. I'm sure that your office, if you knew that that attack would prosecute those agents. No? No. Just as it prosecuted the King and – what was the assailant's name? The assailant of Rodney King? Rodney King. Sorry, I forgot. How quickly memory passes. What were the officers' names? Kuhn and – I forgot as well. You know what I'm talking about. But your office prosecuted those because we don't allow that. It is a bad thing. It's a bad thing even if they wear green uniforms. They're not federal agents. No question, Your Honor. And had anyone said, I saw Agent Byrd or a man fitting the description of Agent Byrd or I saw Agent Winkler or – If somebody had a camera out there, a video cam or something and taken, you know, it would be a different case. But things don't happen like that, and that's why we have juries to sort out the facts. There's no doubt that he was injured, that he had to go to the hospital. He was injured. It was something that looked very much like a kick to the head. There was no doubt about it. A fractured skull. Well, Your Honor, it was a cut and a bruise above the eye. It was not determined by the medical evidence whether it was the result of a kick or some other type of pressure or force to the eye. But it was consistent with a kick. Absolutely, Your Honor. It was consistent with a kick or a number of other actions that could have occurred. However, Your Honor – Has your office done an investigation into this kind of conduct to make sure to see whether or not anybody needs to be prosecuted for doing something like that? I am not aware of my office initiating an investigation into this. There wasn't a – I would think that the U.S. Attorney's Office in Los Angeles, if it becomes aware of serious evidence that somebody was kicked while handcuffed, they would at least consider the possibility, entertain the possibility that there was criminal misconduct. How do you expect agents to behave in those kinds of situations if they don't think that anybody will follow up on that kind of – unless there's a videotape? You're in the Civil Division, though, right? Yes, Your Honor, I am. Well, it should get done somewhere. I'm not sure the Civil Division is right. But you do talk to the folks in the Criminal Division, right? Yes, Your Honor. I mean, you guys are speaking in tongues, right? Yes, Your Honor. And there was an intensive investigation by the Office of Professional Responsibility of the Department of Justice by investigators assigned by the DEA, which did look into the allegations and did not conclude that any Federal agents had engaged in excessive force. However, Your Honor, Judge Mass, the district court, in denying summary judgment to Special Agent Byrd and Special Agent Winkler out of the ten individuals in green who were present during the execution of search warrant, did so based on his determination that the plaintiff, Mr. Hayes, was entitled to a jury determination of whether the conduct to which Agent Winkler and Agent Byrd admitted, the physical contact which they admitted to having with him, was excessive force. I believe that that was the basis for holding those two individuals in the case rather than all ten, and that that determination was error as a matter of law, that Agent Byrd and Agent Winkler were entitled under the Supreme Court authority and the authority of this Court to a pretrial determination of whether the undisputed conduct, pushing Mr. Hayes with one hand to a position on hands and knees, or using one knee to use pressure to force him from his hands and knees to a prone position, whether those actions were excessive force and whether they were so clearly excessive that they would be denied qualified immunity. Kennedy, it wasn't. Pardon me? Now you got it. So what? It wasn't. Okay. Now you got it. Okay. So does that make you feel better? Unfortunately for your clients, we don't simply go on what they admit. If we did that, we could dismiss a lot of cases. Judge Baird would have a heart attack, you know. District judges would have nothing to do if we could only have trials on things the defendants admitted. Criminal cases would go away altogether. It would be a great system. But, Your Honor, that was the only basis for holding these two individuals out of all of the officers and agents who were present that day in the case. You're complaining that they didn't sue more agents. Well, they did. That's your complaint. They did sue eight of the ten. And the district court found that six of the eight should be let out of the case because they did not acknowledge any physical conduct. And that the two of them. How does that help you? Why does that mean that there should have been a different result? Because there were three stories under which there could be potential liability. One is the story by Mr. Hayes. One is the story by his brother-in-law. The third is the testimony by the agents themselves. Aren't they all issues? Don't they all raise issues of fact? No. They ultimately raise issues of law. Certainly the one that we've just been discussing is an issue of law. I think they're mixed, but okay. As to the issue of whether Mr. Dobbs' affidavit, which contradicted Mr. Hayes' testimony, should be considered, that is also an issue of law. And under the Jeffers v. Gomez case, we also have an issue of law as to whether or not the alleged disputed facts were material in preventing summary judgment on qualified immunity. And that's resolved because eight of the ten got off? No. What it says is that you the only way to hold any of the agents in the case, based on either Mr. Hobbs' testimony or, excuse me, either Mr. Hayes' testimony, which says, I don't know who did it, could have been anybody there, or Mr. Dobbs' testimony that says, oh, it was somebody in Green that happened during the handcuffing. Based on that testimony, everybody is equally on the hook. And the only way you can have individual liability against a particular person is by asserting a team effort or group liability argument, that there is no way to connect any potential liability to any of the particular individuals who took part in the search but for whom there is no evidence that they were. So Judge Kaczynski is saying that you would like or feel more comfortable if all ten were part of the defender? No, Your Honor. I believe that would be an erroneous legal determination. But I do think the fact that even the district court ultimately granted summary judgment on behalf of six out of the eight shows at least the district court's recognition that you could not deny summary judgment on qualified immunity grounds when there was absolutely no evidence that the individual in particular violated the constitutional rights of Mr. Hayes. Okay. Thank you. We'll hear from this side. Good morning, Your Honors. My name is Gary Kasselman. I'm appearing on behalf of Appelli. Let me put to rest the statement or implication that the Court found liability or kept the case going against Berg and Winkler, the defendants, because of group liability. The Court's order expressly states to the contrary, quote, nothing in the foregoing analysis depends on or results in Anthony Hayes imposing, quote, group liability, unquote, on any individual Federal defendant. And Judge Matz goes on to discuss the factual reasons and cites Rutherford versus the City of Berkeley and Jones versus Williams. How do you come up with Hayes and Berg? I'm sorry? How do you come up with these two guys? Your client says it was a big blur. There were guys in green, guys in blue, guys in suits. I got kicked by a couple of the guys in green. Where do you have a witness that identifies Berg and Hayes as the two guys? Well, first of all, several of the agents, at least two, were wearing masks, and that wasn't alluded to by counsel for appellant. Well, you're telling me stuff in the real world. I'm interested in stuff in the record. All right. What in the record? The record indicates Mr. Dobbs' declaration is that there were, first of all, the force was used only by persons dressed in green. So that immediately eliminates, assuming that he's telling the truth, or at least it's a tribal issue, no men in blue are doing it. Right. So the LAPD is off the hook. Right. And they were dismissed, voluntary dismissal. During discovery and until after Mr. Hayes' deposition, we were not advised either by counsel, who states that there was an intensive investigation by the DA, which somehow managed not to speak to any of the civilian eyewitnesses or take their statements, that there was such an investigation. I asked for it for years. We were waiting for it, waiting for it, and counsel for appellant had it and was questioning Mr. Hayes in deposition without revealing that it was in her possession or turning over a copy to Mr. Hayes or his counsel so that he could have his memory refreshed. The deposition was on April 21, 2005. The subject incident was on May 1, 2003. LAPD Internal Affairs did an investigation because there was an immediate complaint by Mr. Hayes within three or four days. On May 5, following the May 1 incident, LAPD spoke to Mr. Hayes and he said that within 15 to 30 seconds after he was cuffed, possibly with the one cuff while they were getting the second one, that's when the force was felt. Now, that wasn't provided to me by counsel for the city attorney either, and I was under the impression that they don't do these investigations during pending civil litigation, which has been my experience over many years. In this case, they did, and it wasn't revealed to me that existed. But that's a prior consistent statement. The appellant's entire argument seems to revolve around the fact that Mr. Hayes made a subsequent statement years later that was inconsistent with his prior consistent statement under these circumstances, and Mr. Hayes was not the only observer or recipient here, but Mr. Dobbs observed that it was the men in green. There were two involved with Mr. Hayes, and a third came along and stomped and or kicked him. Mr. Hayes says he got kicked in the side of the head, and of course he has a big black eye and was alleged that there was a fracture there. Whether the medical evidence supports or doesn't support that is irrelevant to the issue of excessive force. Now, Bird and Winkler have admitted physical contact with Mr. Hayes in their own declarations. Certainly they don't admit to doing the things that they're alleged to have done here. But that ---- How do you come up with those two names? Through their declarations. They're certainly DEA agents, and they've admitted contact. We had no way of knowing who was in contact with Mr. Hayes under these circumstances other than the admissions, because they weren't wearing names that were visible. There were eight or ten of them in green. So we have these two involved. And by the way, I should mention that we don't necessarily have to have the kicker or stomper to impose liability because there's also liability for failing to intervene when a police officer breaks the law in front of another officer. There was an effort, of course, not to reveal how this injury occurred. In fact, there's been an attempt to minimize it both by the defendants and the prior defendants and their counsel here. But there's no explanation how Mr. Hayes got this. They want to push it off on the empty chair. But the eyewitness or eyewitnesses indicate that it was the DEA people. It wasn't the LAPD people. And we have two people who were physically involved with Mr. Hayes. One of them says that he pushed him to the ground. Now, the Dobbs Declaration states that Mr. Hayes was already onto the ground or getting down, and then he was shoved the rest of the way by one of the officers. We can't say for a medical certainty whether it was when he was shoved down at that point as Byrd admits in his declaration, or another point which Byrd or Winkler don't admit. These are issues for the jury, and to resolve these, at least within a few seconds, are complicated factual issues. But as I understand qualified immunity, this shouldn't even be here in front of the court of appeal because it resolves on a factual determination, whether it's strictly a factual determination or a mixed issue of law and fact. It isn't an issue for the court of appeal. I state that respectfully, of course, but this appeal should never have been filed because the resolution, I think appellants' clients have been very fortunate to have eight of ten of them get out of this case. And appellants are asking for too much here, given the state of the record and the extreme fortuity that they've had to be relieved of other company that they had with their co-defendants. Originally, those people were left in the case for the most part. Then a motion for reconsideration was done, and the two defendants who are before this court as appellants were still kept in the case. So Judge Matz not only considered this issue once, but twice. And appellants' former clients got the benefit of that. I believe five or six of them were let go as defendants, but we have the two remaining. I think that this is asking for too much. The only thing that identifies these two as the people who likely did this is that they themselves admit to laying hands on your client. Well, practically speaking, we're never going to have them admit it. And I agree with the Court's assessment that if everybody told the truth, there would be a lot of people out of work. But the fact is that they admitted. I'm sorry? Is that a yes? That's what we have thus far, plus the statements of Mr. Hayes, the prior consistent statements that it happened within the first 15 to 30 seconds. There were no LAPD people even around. We have the two people. But it could have been any of the people in green. Well, apparently there were only two or three of them that were in the immediate vicinity of Mr. Hayes. So we have two of the three, as I understand. So that's. Well, we have the declarations. There's also the mysterious man in black who hasn't been identified in the suit. But the persons physically administering the force were in green jumpsuits or whatever those outfits are called. So we know their DEA. We know that at least two of the three were Byrd and Winkler. We have. So they either either one of them applied the force or were in the immediate presence of the person who did. So there's it's not group liability, but it's either failure to intervene, which was somewhat of an issue in the Rodney King matter in 91, the 91 incident, or they applied the force themselves. The jury can make a determination after assessing the testimony and the demeanor of the witnesses who they intend to believe. Otherwise, all law enforcement officers will go around like the Lone Ranger, not wearing name tags. And if we can't exactly identify who it was in that group, who it was in the group of two or three, then nobody can proceed with their lawsuit. And I don't think that that is the law, and I certainly don't think it should become the law. Okay. Thank you. Thank you. As I recall, you're out of time. I'll give you a minute for rebuttal, if you wish.  We'll give you a minute for rebuttal. I think you're out of time otherwise. Thank you, Your Honor. In this initial order, the district court stated that it was not group liability because most of the defendants had been having some physical contact with Hayes. In the hearing on the motion for reconsideration, the Court acknowledged that six of the eight denied having any physical contact, but that Byrd and Winkler admitted to physical contact. And at that point, the Court said that I think Mr. Hayes is entitled to establish before a jury that the contact they admit, the physical contact they admit, inflicting or having with him is excessive. That contact that they admitted was the only evidence of any relationship between Hayes and Byrd and Winkler individually. There was no evidence at all that they were present or in the area at the time of the alleged kicking. Well, let's say we're now reviewing after trial. And taking it unthinkable, assume that the jury comes back with a verdict against your clients. And the evidence is exactly what we have before us. We have evidence from them that they laid hands on him, and we have evidence from the brothers, you know, much as it is given there. Somewhat inconsistent. But then eyewitness accounts are never entirely consistent. And the jury, for whatever reason, winds up believing them and, you know, ruling it. Are you saying this would be insufficient evidence to support a verdict? Yes, Your Honor, I am. And I also think Well, why would that be? They admit to laying hands on him. They admit to being close enough to him. The brothers testify. This is brother, right? Brother-in-law. Brother-in-law. Same thing. No, no, I meant a relative. Okay, so we have that relationship. So obviously they have some reason to lie for each other, maybe. But the jury considers all of that and says, in light of all our evidence, more likely than not, these guys did it. We'd be hard-pressed to say that there wasn't enough evidence there, that we'd have to set aside the verdict, wouldn't we? No, Your Honor. I have two responses to that. First is that the reason there would be insufficient evidence is because the circumstances set forth by Byrd and Winkler in their declarations, a momentary push as they ran past in the first couple of seconds. But they're not going to admit we stomped on his head and said, die. They're not going to say that. They're going to realize maybe, I'm not saying that's what happened, but let's say they had done something like that. They would say, well, maybe their collection would be hazy as to what happened. But they would view the scenes through the filter of their own self-interest. And they would say, oh, no, we were very gentle with him. We treated him like a baby. We were sure we touched him because we wanted to make sure he didn't hit the ground too hard. You know, this is what they'd say. But, of course, we know that no police officer in the world ever has ever done anything like that. They got a guy who's apparently pregnant pretty big, right? Yes, Your Honor, very big. They want to make sure that he's on the ground and that he's not moving. Sometimes they get carried away. Yes, Your Honor. And had Mr. Hayes or Mr. Dobbs testified that they saw a gentleman shove him with strong force, knocking him down so he smashed his head as he ran by, or jabbed him in the knee with excessive force, slamming his head to the ground as they ran by before he was handcuffed, then, yes, I think you'd have an issue of fact as to how much force was used and was it appropriate. But in this case, the scenario that Mr. Dobbs paints and the scenario that Mr. Hayes paints are completely different from the circumstances of the contact by Winkler and by Byrd. What you would have to find is that they admitted to contact when they had no need to do that other than tell the truth. But they made up a whole story around it and that all the other agents lied and made up a whole story around it and that the testimony of the LAPD detective about the differentiation of duties was completely wrong and that somehow you merge all of these things that have no relationship to each other and find that somehow they're consistent and they're just different views. In this case, they are not so. Kennedy, you've never seen a jury do anything like that. You know, I have. I have. And that exactly points out the reason why we need to have summary judgment determinations on qualified immunity, because if you get to the point of a trial  where the jury is faced with letting off the two guys who were stuck, you know, you either have recovery against them or you have recovery from no one and the jury is convinced that some unknown guys in green, some unknown federal agents used excessive force and they don't have the United States as a defendant. Yes, there is that danger that there will be a miscarriage of justice and they will without any evidence as to personal liability by Agent Byrd and Mr. Winkler. Hold Agent Byrd or Mr. Winkler liable for conduct by an unknown federal agent simply because there was not an FTCA claim pursued in this case. Okay. I think we're in the standing position. Thank you, Your Honor. The case is signed and will stand submitted. We'll hear arguments in the last case on the calendar. Those.
judges: Kozinski, Rawlinson, Baer